UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
CRYSTAL M.H.,

                           Plaintiff,           <u>DECISION AND ORDER</u>
                                                    1:23-CV-03142-GRJ

        v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

       In July of 2020, Plaintiff Crystal M.H.[1] applied for Disability Insurance

Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by the Law Office of

Joseph A. Romano, Joseph Albert Romano, Esq., of counsel, commenced

this action seeking judicial review of the Commissioner's denial of benefits

under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the

jurisdiction of a United States Magistrate Judge. (Docket No. 7).

       This case was referred to the undersigned on March 11, 2024.

Presently pending is Plaintiff's Motion for Judgment on the Pleadings under

Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 9). For the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

following reasons, Plaintiff's motion is due to be granted and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on July 30, 2020, alleging disability beginning April 30, 2019. (T at 11).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on September 9, 2021, before ALJ John Loughlin. (T at 33-67). Plaintiff appeared with an attorney and testified. (T at 37-60). The ALJ also received testimony from Melissa Fass-Karlin, a vocational expert. (T at 60-66).

### B.    ALJ's Decision

On October 21, 2021, the ALJ issued a decision denying the application for benefits. (T at 8-32).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2019 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2023 (the date last insured). (T at 13-14).

The ALJ concluded that Plaintiff's obesity; bilateral carpal tunnel syndrome; lumbar spine disorder; asthma, obstructive sleep apnea;

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

essential hypertension; migraine headaches; affective disorders (including depressive disorder, mood disorder, and bipolar disorder); generalized anxiety disorder; and adjustment disorder (with depressed and anxious mood) were severe impairments as defined under the Act. (T at 14).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (T at 15).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can frequently handle and/or finger with both upper extremities; frequently push, pull, and/or operate foot controls with both lower extremities; frequently stoop, kneel, crouch, or crawl; frequently climb stairs or ramps; occasionally climb ladders, ropes, or scaffolds; and occasionally be exposed to vibrations, unprotected heights, or moving machinery parts. (T at 19).

The ALJ further found that Plaintiff can have no more than occasional exposure to atmospheric conditions, such as dust, noxious odors, or fumes, poor ventilation, extreme cold, extreme heat, or wetness, and requires a moderate noise work environment, as defined in the *Dictionary of*

*Occupational Titles* (DOT) and *Selected Characteristics of Occupations*. (T at 19).

The ALJ concluded that Plaintiff was limited to work involving understanding and remembering simple instructions; making simple work-related decisions and carrying out simple instructions; and dealing with occasional changes in a routine work setting. (T at 19). The ALJ found that Plaintiff cannot perform work that requires a specific production rate, such as assembly line work or hourly quota work. (T at 19).

The ALJ concluded that Plaintiff could not perform her past relevant work as a home attendant or child monitor. (T at 25).

However, considering Plaintiff's age (37 on the alleged onset date), education (limited), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 26).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 30, 2019 (the alleged onset date) and October 21, 2021 (the date of the ALJ's decision). (T at 27).  On February 17, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-5).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on April 14, 2023. (Docket No. 1).  On July 12, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 9, 10).[3]  The Commissioner interposed a brief in opposition to the motion and in support of the denial of benefits, on October 11, 2023. (Docket No. 15).  On October 25, 2023, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 23).

## II.  APPLICABLE LAW

A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See*

---

[3] Although Plaintiff styled his motion as a motion for summary judgment the Court construes the motion as a motion for judgment on the pleadings consistent with the practice in this district.

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises several arguments in support of her request for remand.  These arguments can be divided broadly into challenges of the ALJ's assessment of her mental and physical limitations.  This Court will address each challenge in turn.

### A.   *Mental Limitations*

The ALJ determined that Plaintiff had several mental impairments that were "severe" within the meaning of the Social Security Act - affective disorders including depressive disorder, mood disorder, and bipolar disorder; generalized anxiety disorder; and adjustment disorder, with depressed and anxious mood. (T at 14).

The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings-level impairment set forth in 20 CFR Part 404, Subpart P,

Appendix 1. (T at 15).  With respect to Plaintiff's mental impairments, the

ALJ considered Listings 12.04 (Depressive, bipolar and related disorders),

12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (trauma –

and stressor-related disorders). (T at 16-19).

The ALJ concluded that Plaintiff retained the RFC to meet the mental

demands of basic work activity, with the following limitations: She is limited

to work involving understanding and remembering simple instructions;

making simple work-related decisions and carrying out simple instructions;

and dealing with occasional changes in a routine work setting. (T at 19).

She cannot perform work that requires a specific production rate, such as

assembly line work or hourly quota work. (T at 19).

This Court will consider below each of Plaintiff's challenges to the

ALJ's analysis of her mental impairments.

       1.     *Step Two Severity Analysis*

The Commissioner uses a "special technique" to evaluate the severity

of mental impairments at step two of the sequential analysis. *See* 20 C.F.R.

§ 404.1520a(a).  The ALJ rates the degree of functional limitation resulting

from the claimant's mental impairment(s) to determine whether the

impairment(s) is/are "severe." *See id.* at § 404.1520a(d)(1).

To perform this analysis, the ALJ considers the degree of limitation in four (4) broad functional areas – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  If the limitation in these domains is no more than "mild," and if the evidence does not otherwise indicate more than a mild limitation in the claimant's activity to perform basic work activities, then the mental impairment(s) will be considered non-severe. *See id.*

In the present case, the ALJ found that Plaintiff had severe mental impairments, but did not mention the special technique or otherwise explain his step two analysis regarding Plaintiff's mental functioning. (T at 14-15). Although this was error, it does not require remand.

The ALJ found that Plaintiff had severe mental impairments and, as discussed further below, thoroughly considered the record regarding those impairments and reached an assessment of Plaintiff's mental limitations supported by substantial evidence.  As such, any error in failing to discuss the special technique at step two was harmless.  *See Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013).

2.   *Listings*

At step three of the sequential evaluation, the ALJ must determine

whether the claimant has an impairment or combination of impairments that

meets or equals an impairment listed in Appendix 1 of the Regulations (the

"Listings"). See 20 C.F.R. §§ 404.1520(d), 416.920(d).

If a claimant meets or equals a listed impairment, she is "conclusively

presumed to be disabled and entitled to benefits." *Bowen v. City of New*

*York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). "The

claimant bears the burden of establishing that his or her impairments match

a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp.

3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d

319, 324 (W.D.N.Y.2006)).

Here, as discussed above, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled

one of the Listings. (T at 15).

In particular, the ALJ concluded that Plaintiff's impairments did not

satisfy the paragraph "B" requirements of Listings 12.04 (Depressive,

bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive

disorders), and 12.15 (trauma – and stressor-related disorders). (T at 15-

19). The "B" criteria for these Listings are met when a claimant has extreme

limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; maintaining concentration, persistence, or pace; and adapting or managing oneself.

The ALJ found that Plaintiff had mild limitation as to remembering or applying information; mild impairment in interacting with others; moderate limitation regarding concentrating, persisting, or maintaining pace; and moderate impairment in adapting or managing herself. (T at 18).

For the following reasons the ALJ's step three Listings analysis is supported by substantial evidence.

First, the ALJ relied of the assessments of two State Agency review physicians (Dr. Weitzen and Dr. Bhutwala), who opined that Plaintiff had no limitation interacting with others; mild impairment in understanding, remembering, or applying information; moderate limitation with respect to concentrating, persisting, or maintaining pace; and moderate impairment in adapting or managing herself. (T at 18, 79, 106). *See Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019)("'[S]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'")(quoting *Leach ex rel. Murray v.*

*Barnhart,* 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)).

Second, the ALJ reasonably read the record as documenting generally unremarkable mental examination findings, including appropriate grooming and motor activity; cooperative attitude; normal speech; coherent thought form; unremarkable thought content; fair or good concentration, fund of knowledge, recall, retention, insight, intellectual functioning, and judgment. (T at 17, 369, 372, 381, 706-07, 710-11, 713-14, 717-18, 720-21, 725-26, 734-35, 743-44, 747, 751, 756, 761, 764, 768, 774, 779-80, 783, 786).

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED),

2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Third, two consultative psychiatric evaluations provide additional support for the ALJ's decision.  Dr. Joshua Goldstein performed a consultative psychiatric evaluation in February of 2020.  He diagnosed adjustment disorder with depressed and anxious mood and characterized Plaintiff's prognosis as "fair." (T at 424).

Dr. Goldstein assessed no limitation in Plaintiff's ability to understand, remember, or apply simple directions and instructions; mild impairment with respect to understanding, remembering, or applying complex directions and instructions; no limitation to using reason and judgment to make work-related decisions; mild impairment as to interacting with others; mild limitation with respect to concentrating and performing at a consistent pace; mild impairment in sustaining an ordinary routine and regular attendance; and mild limitation in regulating emotions, controlling behavior, and maintaining well-being. (T at 423-24).

Dr. Goldstein performed a second evaluation in December of 2020 and opined that Plaintiff had mild to no evidence of limitation as to her ability to meet the mental demands of basic work activity. (T at 583).

Although the ALJ found Plaintiff more limited psychologically than Dr. Goldstein did (T at 18), the consultative examiner's opinions nevertheless provide additional support for the ALJ's conclusion that Plaintiff did not have marked or extreme limitation in any of the domains of mental functioning.

Accordingly, the Court concludes that the ALJ's Listings analysis is supported by substantial evidence and consistent with applicable law.

### 3.   *Mental RFC*

As noted above, the ALJ concluded that Plaintiff retained the RFC to meet the mental demands of basic work activity, with the following limitations: She is limited to work involving understanding and remembering simple instructions; making simple work-related decisions and carrying out simple instructions; and dealing with occasional changes in a routine work setting. (T at 19).  She cannot perform work that requires a specific production rate, such as assembly line work or hourly quota work. (T at 19).

The ALJ's assessment is supported by substantial evidence, including (as discussed above) a reasonable reading of the treatment

record and appropriate reconciliation of the medical opinion evidence, including the assessments of the State Agency review physicians and consultative psychological examiner.

To the extent the record shows mild to moderate impairment in Plaintiff's mental functioning, including her ability to concentrate, persist, maintain pace, adapt, and/or manage herself, the ALJ appropriately accounted for this impairment by incorporating significant non-exertional limitations into the RFC. (T at 19). *See Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL 4376414, at *18 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases); *see also Campos v. Saul*, No. 18CV9809 (DF), 2020 WL 1285113, at *23 (S.D.N.Y. Mar. 18, 2020); *Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020).

Therefore, the Court finds no reversible error with respect to the ALJ's consideration of Plaintiff's mental impairments.

B.     *Physical Limitations*

As noted above, the ALJ concluded that Plaintiff's obesity; bilateral carpal tunnel syndrome; lumbar spine disorder; asthma, obstructive sleep apnea; essential hypertension; and migraine headaches were severe impairments as defined under the Act. (T at 14).

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as defined in 20 CFR 404.1567 (b), with the following physical limitations: she can frequently handle and/or finger with both upper extremities; frequently push, pull, and/or operate foot controls with both lower extremities; frequently stoop, kneel, crouch, or crawl; frequently climb stairs or ramps; occasionally climb ladders, ropes, or scaffolds; and occasionally be exposed to vibrations, unprotected heights, or moving machinery parts. (T at 19).

The ALJ further found that Plaintiff can have occasional exposure to atmospheric conditions, such as dust, noxious odors or fumes, poor ventilation, extreme cold, extreme heat, or wetness, and requires a moderate noise work environment, as defined in the *Dictionary of Occupational Titles* (DOT) and *Selected Characteristics of Occupations*. (T at 19).

For the following reasons, the Court finds that the ALJ's assessment of Plaintiff's physical limitations is not supported by substantial evidence and must be revisited on remand.

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In September of 2020, Manoj V. Thomas, Plaintiff's treating physical therapist, reported that Plaintiff was unable to perform her activities of daily living without pain, could not carry a gallon of milk, and could not tolerate prolonged static positions. (T at 587).

In January of 2021, Mr. Thomas stated that Plaintiff was unable to perform her activities of daily living without pain, could not walk more than 1 block, was unable to transfer from sitting to standing without pain, could not stand more than 10 minutes, and could not climb stairs without pain. (T at 657).

In March of 2021, Dr. Sireen Gopal, Plaintiff's treating pain management physician, completed a medical source statement, in which she opined that Plaintiff could occasionally lift/carry up to 10 pounds; sit, stand, or walk for 1 hour in an 8-hour workday; occasionally reach, handle, finger, feel, and push/pull; occasionally operate foot controls; occasionally climb stairs and ramps and balance; and never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. (T at 697).

Dr. Gopal also reported that Plaintiff needed a quiet work environment; should never work at unprotected heights or in extreme temperatures; and was limited to occasionally working with moving mechanical parts; operating a motor vehicle; tolerating humidity and wetness; and being exposed to dust, odors, fumes, and pulmonary irritants. (T at 698).

Dr. Gopal completed a second medical source statement in August of 2021, wherein she assessed the same limitation, except that he opined that Plaintiff could occasionally lift/carry up to 100 pounds. (T at 789-94).

The ALJ found the opinions of Mr. Thomas and Dr. Gopal unpersuasive.  (T at 23-24).

The ALJ found that Mr. Thomas's contemporaneous physical examination reports provided "some support" for his opinions, but discounted the assessments because there were "remarkably inconsistent with each other …." (T at 23).  Notably, however, the ALJ failed to identify the inconsistencies and there are no "remarkable" inconsistencies obvious from a review of the two assessments.  It is also not clear whether the ALJ considered re-contacting Mr. Thomas to clarify whatever inconsistencies the ALJ believed he recognized.

In addition, the ALJ considered the opinions of Mr. Thomas and Dr. Gopal individually inconsistent with, and not supported by, the record.  (T at 23, 24). However, it is not clear that the ALJ was mindful of the significance of the fact that the opinions of both treating providers were, in important respects, consistent with each other.  This was error.  *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the

opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Further, the ALJ recognized that while early portions of the treatment record did not evidence chronically limiting symptoms, subsequent examination notes documented swelling and tenderness in the right hand, decreased ranges of motion and grip strength, and limited range of motion in the right knee with reduced strength. (T at 22, 586, 588, 591).

This portion of the record provides important support for the assessments of Mr. Thomas and Dr. Gopal.

Instead, the ALJ read the record as "suggest[ing]" that Plaintiff's symptoms were responding to treatment and were "likely to continue improving." (T at 22).

Dr. Gopal stated, however, that the limitations she identified had lasted – or would last – at least 12 consecutive months. (T at 699, 794). Further, nearly 12 months elapsed between Mr. Thomas's first opinion

(September 2020) and Dr. Gopal's second medical source statement (August 2021).

The ALJ's assessment impermissibly substituted his "armchair" views of the medical evidence. *See Mackey v. Comm'r of Soc. Sec.*, 519 F. Supp. 3d 151, 153 (E.D.N.Y. 2021)("Such substitution of the ALJ's armchair views of medical evidence is clearly impermissible."); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) ("T]he ALJ was not at liberty to substitute his own lay interpretation of that diagnostic test for the uncontradicted testimony of [the treating physician]"); *Amarante v. Comm'r of Soc. Sec.*, No. 16-CV-00717 (RJS) (BCM), 2017 U.S. Dist. LEXIS 146768, at *33 (S.D.N.Y. Sep. 8, 2017)(remanding because ALJ "improperly assume[d] the mantle of a medical expert")

In addition, the ALJ did not find *any* of the medical source opinions regarding Plaintiff's physical functioning persuasive.

The State Agency review physicians (Dr. Kirch and Dr. Dickerson) opined that Plaintiff could perform light work (T at 82, 109), but the ALJ found these assessments only "partially persuasive" in light of the evidence of Plaintiff's "unsolved musculoskeletal issues." (T at 23).

Dr. Ann Marie Finegan performed a consultative examination in February of 2020. She opined that Plaintiff should not be exposed to

fumes or other known respiratory irritants; should not lift, push, pull, or carry more than about 1 pound using her right hand; and was mildly limited with respect to kneeling, crouching, crawling, and balancing. (T at 418). The ALJ found Dr. Finegan's assessment unpersuasive because it was "vague" and unsupported by the record. (T at 23-24).

Dr. Saundra Nickens performed a consultative examination in November of 2020 and found that Plaintiff had mild limitation with respect to activities requiring squatting and recommended that she avoid all asthma triggers. (T at 577). The ALJ found Dr. Nickens's assessment unpersuasive because it was "vague" and not supported by the record. (T at 24).

Although an ALJ may reach a decision that does not completely correspond with any of the medical opinions of record, the ALJ's reasoning must be readily discernable, and his/her ultimate decision must be supported by substantial evidence. This is particularly so where, as here, Plaintiff had significant, and specific, work-related limitations, including restrictions regarding noise and environmental conditions.

Lastly, the Court finds that this is a case where the ALJ's failure to perform a function-by-function assessment of Plaintiff's ability to meet

several of the key demands of light work (e.g., sitting, standing, walking, lifting, carrying) constitutes error requiring remand.

It is well-settled that before determining a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945.

The work-related functions include physical abilities (standing, sitting, walking, lifting, carrying, pushing, pulling), mental abilities (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be impacted by impairments (seeing, hearing, ability to tolerate environmental factors). *See* SSR 96-8P; *see also* 20 C.F.R. § 404.1545(b)-(d); id. § 416.945; *Cichocki*, 729 F.3d at 176.

Although the Second Circuit has not applied a "per se" rule requiring remand in cases where ALJ did not provide an "explicit" function-by-function analysis, *see Cichocki*, 729 F.3d at 176; *compare Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn. Feb. 20, 2007)("[a]lthough a function-by-function analysis is desirable, SSR 96-8p

25

does not require ALJs to produce [ ] a detailed statement in writing"), *with McMullen v. Astrue*, No. 5:05-cv-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because "the ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis"), "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichock*i, 729 F.3d at 177.

Here, the ALJ failed to assess Plaintiff's capacity to perform relevant functions, despite contrary evidence in the record (including assessments from treating providers), and with inadequacies in his analysis, as outlined above, that frustrate meaningful review.  A remand is, therefore, appropriate. *See Gomez v. Saul*, No. 1:19-CV-04708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29, 2021).

## C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further

administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court finds a remand necessary for proper consideration of the evidence concerning Plaintiff's physical limitations, including the medical opinion evidence; consideration as to whether further development of the record is necessary; and a function-by-function assessment of Plaintiff's work-related abilities.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, which the Court construes as a Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED, and this case is remanded for further proceedings consistent with this Decision and Order.  The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: May 2, 2024                    *s/ Gary R. Jones*
                                      GARY R. JONES
                                      United States Magistrate Judge